Brown, C.J.,
dissenting.
{¶ 22} At the heart of this matter is the meaning of the word “final” in R.C. 3314.015(B)(3). The majority has decided that use of the single word “final” means final and appealable. Because I believe that the correct interpretation of “final” as used in R.C. 3314.015(B)(3) is that the determination of the Ohio Department of Education (“ODE”) whether an entity is education-oriented is not subject to appeal under R.C. 119.12,1 respectfully dissent.
{¶ 23} The primary assumption for the majority’s interpretation is that the General Assembly used the word “final” as a legal term of art to mean a judgment or order that is subject to appellate review. The majority further assumes that the General Assembly would have stated explicitly that determinations of education-oriented status are “final and not subject to appeal” if it had intended there to be no appeal right under R.C. 3314.015(B)(3), particularly given that R.C. 3314.015(D) grants a general appeal right for ODE denials of applications to sponsor community schools. The majority cites several statutory provisions in which the General Assembly has provided explicitly that a decision is “final and not subject to appeal.” See R.C. 2712.21, 3318.051(E), and 5126.0214.
{¶ 24} The majority’s assumptions are not borne out by other provisions of the Revised Code. If the General Assembly so clearly intended the use of “final” in R.C. 3314.015(B)(3) to mean final and appealable without actually using those words, why is the Revised Code replete with instances in which the General Assembly explicitly says both when it intends a decision to be reviewable on appeal? See R.C. 3769.0810(1) (decision by the State Racing Commission to impose certain assessments is “final, subject to appeal under section 119.12 of the Revised Code”), 3905.14(G) (decision by the superintendent of insurance to issue a cease-and-desist order is final, and “[t]he final order may be appealed”), 3905.50(F) (“All final orders and decisions of the superintendent [of insurance] are subject to judicial review”), 4141.26(F) (“The validity of any general order or rule of the director [of job and family services] * * * or of any final order or action of the unemployment compensation review commission respecting any such general order or rule may be determined by the court of common pleas of Franklin county”), 4517.58 (decision of the Motor Vehicle Dealers Board is “final * * * except that any person adversely affected by the decision may appeal in the manner provided by sections 119.01 to 119.13 of the Revised Code”), 4731.23(E) (decision of the State Medical Board is “final * * * except that the certificate holder may appeal in the manner provided by Chapter 119. of the *475 Revised Code”), 4763.11(F) (decision of Real Estate Appraiser Board “is final, subject to review in the manner provided for in Chapter 119. of the Revised Code and appeal to any court of common pleas”), and 5709.22(B) (“The final determination [by the tax commissioner] is subject to appeal”); see also R.C. 5703.70(C)(3), 5711.31, and 5727.47(E). Would it not have been sufficient under the majority’s interpretation for the General Assembly to provide simply that decisions under these statutes are final?
{¶ 25} And what is this court to make of the host of other instances in which the General Assembly has simply provided that a decision of an administrative agency or other individual or entity is “final”? See R.C. 122.30(C)(1)(2), 122.42(A)(2), 122.74(A)(2), 124.03(A)(1), 145.01(R)(3), 173.19(F), 742.01(L)(3), 1513.05, 1515.02, 3302.10(J), 3306.34(1), 3307.01(B), 3307.74(E), 3309.01(A) and (B), 3309.31(E), 3311.06(G), 3314.08(0)(2)(d), 3769.02, 3769.089, 5126.281(A)(3), and 5505.01(S)(3). Did the General Assembly intend for all of these decisions to be final orders subject to review on appeal even where the statutes make no mention of an appeal right?
{¶ 26} The lesson gained from a review of the varying uses of the word “final” throughout the Revised Code is that the word is susceptible of more than one meaning. Where statutory language is susceptible of more than one meaning, the rules of statutory interpretation must be applied to determine the true intent of the legislature. Wingate v. Hordge (1979), 60 Ohio St.2d 55, 58, 14 O.O.3d 212, 396 N.E.2d 770. A guiding principle of statutory interpretation is that the statute must be construed as a whole and each of its parts must be given effect so that they are compatible with each other and related enactments. Humphrys v. Winous Co. (1956), 165 Ohio St. 45, 49, 59 O.O. 65, 133 N.E.2d 780.
{¶ 27} By interpreting the statutory scheme as establishing a two-stage process for the review of applications to sponsor community schools, R.C. 3314.015(B)(3) can be construed in a way that gives each part of the statute effect and renders the statute compatible with the other statutes governing these sponsorship applications. R.C. 3314.02(C)(1) allows only six categories of entities to sponsor community schools. Therefore, ODE must make a preliminary determination regarding whether an entity falls within one of these categories and is eligible to become a sponsor of a community school. ODE’s administrative regulations specifically define an entity that falls within one of the categories enumerated in R.C. 3314.02(C)(1) as an “eligible entity.” Ohio Adm.Code 3301-102-02(H). For an entity claiming eligibility under R.C. 3314.02(C)(1)(f), this preliminary determination of eligibility includes a determination, within the discretion of ODE, whether the entity is education-oriented. R.C. 3314.02(C)(1)(f)(iii) and 3314.015(B)(3).
*476 {¶ 28} Once there has been a preliminary determination that an entity is an eligible entity, ODE must review the application in light of its rules regarding the criteria, procedures, and deadlines for processing applications to become a sponsor of a community school. Ohio Adm.Code 3301-102-03. A decision disapproving an application from an entity listed in R.C. 3314.02(C)(1) is subject to appeal pursuant to R.C. 119.12. R.C. 3314.015(D); see also Ohio Adm.Code 3301-102-03(G).
{¶ 29} Most of the determinations regarding eligibility under R.C. 3314.02(C)(1) are mechanical and involve no exercise of discretion by ODE. Certainly, an ODE determination that an applying entity fails to satisfy one of these mechanical criteria would result in the end of consideration of that entity’s application for community-school sponsorship, yet no one could reasonably suggest that such a determination is based upon the merits of the application or that such a determination is entitled to appellate review.
{¶ 30} A finding that an entity is education-oriented admittedly is different from most of the other preliminary eligibility requirements.[1] It contains a subjective component and requires exercise of discretion by ODE. But this determination is no more on the merits of the application than any other determination made by ODE under R.C. 3314.02(C)(1). It is also the only one of the criteria under subsection (C)(1)(f) that the General Assembly found necessary to designate as “final.” This language suggests that the General Assembly recognized the potential for attempted litigation on this issue, but intended to foreclose such litigation because it is not a decision on the merits of the application that would be subject to appeal in accordance with R.C. 3314.015(D).
{¶ 31} Viewing the ODE’s review of. a community-school sponsorship application under R.C. 3314.015 as a two-stage process is further supported by the last sentence of R.C. 3314.02(C)(1), which permits any entity that falls within one of the six enumerated categories to enter into preliminary agreements with any person or group of individuals proposing to establish a new community school to finalize plans for the school, to establish a governing authority for the school, and *477 to negotiate contracts. R.C. 3314.02(C)(2). The ability of an eligible entity to enter into preliminary agreements prior to a final decision on the merits of its application to sponsor a community school presumes that there has been a threshold determination by ODE that an entity falls within one of the R.C. 3314.02(C)(1) categories.
{¶ 32} The majority’s interpretation renders superfluous the language in R.C. 3314.015(B)(3) that “[s]uch determination of the department is final.” If, as the majority contends, a determination that an entity is not education-oriented is a disapproval of the entity for sponsorship of a community school under R.C. 3314.015(D), why did the General Assembly specifically include language in R.C. 3314.015(B)(3) that determinations that an entity is education-oriented are final? Why is a determination regarding whether an entity is education-oriented singled out in the statute?
{¶ 33} The majority claims that it is not our place to question why the General Assembly chose to treat determinations of education-oriented status differently from all other ODE decisions under R.C. 3314.02 and 3314.015. It is precisely our place to do so. It is this court’s role to interpret Ohio statutes. That interpretation can be aided by ascertaining the intent of the legislature where the statutory language is susceptible of more than one meaning. In ascertaining legislative intent, this court must presume that the language employed was deliberate and meaningful.
{¶ 34} R.C. 3314.015(D) generally grants a right to appeal ODE decisions disapproving an entity for sponsorship of a community school. But R.C. 3314.015(B)(2) and (3) designate as final two types of decisions by ODE: the approval of the mission of schools sponsored by state universities and the determination of whether an entity is education-oriented. By specifying only those determinations as final, the General Assembly clearly intended to convey that these subjective decisions should be treated differently from other subjective decisions made by ODE regarding community-school sponsorship. The only reasonable explanation for the different treatment of these determinations is that the General Assembly intended to provide exceptions to the general appeal right granted in R.C. 3314.015(D) for certain decisions requiring ODE’s exercise of discretion.
{¶ 35} Additionally, the majority’s rejection of the two-stage application process yields strange results. The majority concludes that a decision finding that an entity is not an entity specified in R.C. 3314.02(C)(1) is a decision disapproving the entity for sponsorship of a community school, which would be appealable under R.C. 3314.015(D). Yet the majority also appears to conclude that an ODE determination that an entity does not fall within the group of entities set forth in R.C. 3314.02(C)(1) for any reason other than that the entity is not education- *478 oriented under R.C. 3314.02(C)(l)(f)(iii) is not subject to appeal under R.C. 3314.015(D). The majority has to read language into R.C. 3314.02(C)(1)(a) through (e) and (f)(i), (ii), and (iv) to render these determinations not subject to appeal under R.C. 3314.015(D) in order to justify its conclusion that an ODE determination that an entity is not education-oriented is a decision disapproving the entity for sponsorship of a community school.
{¶ 36} Based on the language of R.C. 3314.015 in its entirety and the other statutory provisions regarding community schools, I believe that the General Assembly intended ODE’s determination regarding whether an entity is education-oriented not to be subject to review under R.C. 119.12. It is clear to me that the majority believes that an ODE determination that an entity is not education-oriented ought to be subject to review on appeal and not consigned to what it perceives to be “an administrative abyss.” Perhaps this would be the wiser course. But the General Assembly has given us a statute that cannot be read reasonably to permit this outcome without reading significant additional language into the statutory scheme and rendering portions of the scheme ineffective or redundant. It is not our place to substitute our views about how the process of applying for community-school sponsorship ought to work for the procedure set forth by the General Assembly. Accordingly, I dissent.

. R.C. 3314.02(C)(1)(e) provides that a community school may be sponsored by a designee of the board of trustees of any of the 13 state universities or the board of trustees itself as long as a mission of the proposed school will be “the practical demonstration of teaching methods, educational technology, or other teaching practices that are included in the curriculum of the university’s teacher preparation program approved by the state board of education.” R.C. 3314.015(B)(2) provides that ODE shall determine, pursuant to criteria adopted by administrative rule, “whether the mission proposed to be specified in the contract of a community school to be sponsored by a state university board of trustees or the board’s designee under division (C)(1)(e) of section 3314.02 of the Revised Code complies with the requirements of that division.” Like a determination that an entity is education-oriented, a determination that the mission complies with R.C. 3314.02(C)(1)(e) is final.